**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| APPALACHIAN LAND AND CONSERVATION SERVICES, | | No. 4:25-CV-00472 |
| Plaintiff, | | (Chief Judge Brann) |
| v. | | |
| PORTER EQUIPMENT CO., | | |
| Defendant. | | |

**MEMORANDUM OPINION**

**JUNE 26, 2026**

## I.    BACKGROUND

Plaintiff Appalachian Land and Conservation Services ("Plaintiff") filed a three-count complaint against Defendant Porter Equipment Co. ("Defendant") for fraud, breach of contract, and breach of warranty of fitness for a particular purpose arising out of the sale of a bulldozer between the two parties.[1] Plaintiff filed originally in the Court of Common Pleas of Lycoming County, Pennsylvania, and Defendant removed the case to this Court based on diversity of citizenship.[2]

Defendant first filed a motion purportedly for summary judgment on June 27, 2025, but upon examination of the motion it was more properly considered as a

---

[1]    Doc. 1-2.
[2]    Defendant is a citizen of the State of Georgia and Plaintiff is a citizen of Pennsylvania for purposes of jurisdictional analysis. Doc. 1.

motion to deem three requests for admission ("RFAs") admitted.[3] The Court denied the summary judgment motion but deemed two out of the three RFAs admitted.[4]

Defendant has now filed the instant motion for summary judgment on all three of Plaintiffs' counts. The motion is ripe for disposition. For the reasons stated below, it is granted in part and denied in part.

## II.    LAW

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[6] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[7] Conversely, to survive summary judgment, a plaintiff must "point to

---

[3]    Doc. 12; Doc. 18.
[4]    Doc. 18 at 3. To note, Defendant asserts in the instant motion that the Court deemed all three RFAs admitted. Not so. Instead, the Court found that the third RFA was incomprehensible and denied the motion to deem its contents admitted. Doc. 18 at 3 n.8.
[5]    FED. R. CIV. P. 56(a).
[6]    *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
[7]    *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).

admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[8]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[9] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[10] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[11] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[12]

### B.    Undisputed Facts

With that standard outlining the Court's framework for review, I now turn to the undisputed facts.

The case arises out of the sale of a 1999 John Deere 650 Bulldozer ("the bulldozer").[13] Plaintiff is a natural resources conservation organization that deals in land and timber, owned by Josh First ("Mr. First").[14] Defendant is a farm machinery

---

[8]    *Id.*

[9]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[10]   *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[11]   FED. R. CIV. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[12]   FED. R. CIV. P. 56(c)(3).

[13]   Doc. 31-2 (PX 1).

[14]   Doc. 28-3 (First Depo.) at 7:16-8:8.

and heavy equipment sales representative whose business involves connecting distributors with customers, owned by Clayton Porter ("Mr. Porter").[15] One of Defendant's main distributor locations is the Quarrick equipment dealership in Uniontown, Pennsylvania.[16]

Defendant listed on its website an advertisement for the bulldozer which indicated the price was $68,000, that it was in used condition with 2,546 hours, that it had a winch, and, *inter alia*, "ULTRA CLEAN UNIT, ORIGINAL HOURS."[17] Plaintiff sought to buy a bulldozer with a logging winch, and, upon noting from Defendant's website that Quarrick had several available models of bulldozer appropriate for their business, Mr. First reached out to Mr. Porter.[18]

Mr. First visited the Quarrick facility to examine the several bulldozers under consideration and brought a mechanic, John Stoltzfus ("Stoltzfus"), with him.[19] Mr. First and Stoltzfus did "some basic driving and testing" on the bulldozers independently, but with Quarrick staff available for any problems or questions during the inspection.[20] During Mr. First's inspection of the bulldozer, Mr. First and Stoltzfus tested the winch in part, running the cable in and out and attempting to maneuver it.[21] Mr. First did not test the winch "under load," meaning pulling

---

[15]   Doc. 31-3 (Porter Depo.) at 12:16-13:21.
[16]   *Id.* at 14:13-23, 15:6-16, 18:21-19:13.
[17]   Doc. 31-2 (PX 1).
[18]   Doc. 28-3 at 11:18-12:16.
[19]   *Id.* at 17:6-18.
[20]   *Id.* at 17:6-18, 24:8-22.
[21]   *Id.* at 40:3-14.

something heavy with the winch; Quarrick also did not have readily apparent any logs or heavy items for testing the winch under load.[22] Mr. First and Stoltzfus did not examine the undercarriage of the bulldozer, but did note that the hours meter read roughly 2500-2600 hours at the time of inspection.[23]

Mr. First and Stoltzfus examined the machines for about two hours, settling on the bulldozer at issue here.[24] In that process, Mr. First and Stoltzfus excluded from consideration other bulldozers with defects, such as a poorly wound cable on the winch or bad brakes.[25]

After determining that he wanted to purchase the bulldozer in question, Mr. First began negotiating the price with Mr. Porter and planning for financing.[26] They agreed on the price of $67,000 for the bulldozer, based in part on the hours listed on the hours meter of the bulldozer, and Mr. Porter sent Mr. First a corresponding invoice.[27] The invoice listed as one term out of many under the "description" header that the bulldozer was "SOLD AS IS – NO WARRANTY."[28]

There is a dispute regarding the discussion of the "as is" nature of the sale. Plaintiff claims that receipt of the invoice was the first time Mr. First had been

---

[22]  Doc. 28-4 (Stoltzfus Depo.) at 25:12-22.
[23]  Doc. 28-3 at 45:23-46:6; Doc. 28-4 at 25:23-26:1.
[24]  *Id.* at 24:22-25:2.
[25]  *Id.* at 38:8-23.
[26]  *Id.* at 28:5-32:5.
[27]  *Id.* at 31:21-32:9.
[28]  Doc. 28-5. All the terms were in capital letters, not just the "as is" term.

informed that the bulldozer was being sold as is;[29] Defendant asserts that, while Mr. Porter does not recall having the conversation with Mr. First specifically, in almost every negotiation with customers he discusses the warranty-free nature of the sale over the phone before finalizing.[30] Mr. First, after seeing the "as is" clause on the invoice, called Mr. Porter, and asserts that Mr. Porter informed him that with the low, original hours on the bulldozer, Mr. First did not need to worry about a warranty and that he "stood behind [the bulldozer] if there was a problem."[31] For the purposes of this motion, as Plaintiff is the nonmoving party, the Court will draw all inferences in light most favorable to Plaintiff and construe the facts as it asserts them to be for this issue, given that Plaintiff has provided sufficient evidence to raise a dispute.[32]

After Plaintiff purchased the bulldozer, it was delivered to the worksite and Plaintiff began to use it for a logging job. Plaintiff attempted to use the bulldozer for two weeks, where it worked only intermittingly and leaked fluid.[33] Mr. First reached out to Mr. Porter and attempted to receive troubleshooting advice or replacement parts, and Mr. Porter worked with Mr. First for a time to do so until the relationship deteriorated with the specter of litigation.[34]

---

[29]  Doc. 28-3 at 41:8-11.
[30]  Doc. 31-3 at 34:14-20.
[31]  Doc. 28-3 at 42:1-5.
[32]  Plaintiff has provided non-conclusory testimony in the form of Plaintiff's deposition that this phone call occurred, which is sufficient to raise a dispute of material fact on an issue. *See Cooper v. Pa. Dept. of Corrections*, 756 F. App'x 130, 134 n.3 (3d Cir. 2018).
[33]  Doc. 28-4 (Stoltzfus Depo.) at 35:5-15.
[34]  Doc. 28-3 at 60:9-11.

Mr. First had the bulldozer taken to Five Star, a repair shop, ("Five Star") where mechanic Christian Mitchell ("Mitchell") examined the machine. Mitchell discovered significant damage and debris in the winch, noting that the winch was not operable at all.[35] Mitchell also found other damage to the machine, including noting that the hours meter was defective and that the turbo water pump and two undercarriage rollers should be replaced.[36]

Mitchell had no way of knowing when the winch became inoperable, noting that improper care could lead to rapid deterioration of the machine within weeks.[37] With this specific hour meter, Mitchell was not aware of any way to physically turn the hours back to a lower number.[38] Five Star also uncovered a warranty report from John Deere in 2003 that listed the hours on the bulldozer as 3300.[39]

Defendant submits that the bulldozer was inspected by Quarrick prior to sale, which included "a review of all oils, engine, drivetrain and all major functions including the winch."[40] Matthew Quarrick ("Quarrick"), the owner of Quarrick's facility, asserts that the winch was operational at that time.[41] Quarrick does not have any records of the inspection, and Quarrick did not confirm that the winch was tested

---

[35]    Doc. 31-4 (Mitchell Depo.) at 14:17-23.
[36]    *Id.* at 36:7-10, 39:4-6.
[37]    *Id.* at 54:9-11.
[38]    *Id.* at 52:24-53:4.
[39]    Doc. 28-3 at 36:14-16; Doc. 31-4 at 38:14-16.
[40]    Doc. 28-1 (Quarrick Aff.) at 1-2.
[41]    *Id.*

"under load."[42] Plaintiff, on the other hand, asserts that the winch was defective immediately after purchase, leaking fluid and, as noted, working only intermittently.[43]

### C.    Analysis

Plaintiff brings three claims against Defendant arising out of the above facts: fraud, breach of contract, and breach of warranty of fitness for a particular purpose.[44] The Court addresses each in turn.

### 1.    Fraud

First, Plaintiff brings a common law fraud claim against Defendant. Fraud requires proof of the following elements: "'(1) a misrepresentation or a concealment; (2) which is material to the transaction at hand; (3) made with the knowledge of its falsity or recklessness as to whether it is true or false (for a misrepresentation), or calculated to deceive (for a concealment); (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) a resulting injury proximately caused by such reliance.'"[45]

Plaintiff makes no attempt to address these elements nor to establish which theory of fraud it pursues.[46] Regardless, Plaintiff's fraud claim is barred by the

---

[42]    Docs. 30-2, 30-3, 30-4.

[43]    Doc. 28-3 at 43:18-23.

[44]    Doc. 1-2 at Counts I-III.

[45]    *Team Biondi, LLC v. Navistar, Inc.*, 665 F. Supp. 3d 633, 644 (M.D. Pa. 2023) (Brann, J.) (quoting in part *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022)).

[46]    Doc. 31 at 4-5. Indeed, Plaintiff's entire opposition to summary judgment consists of just over a page of argument without a single case citation. The Court has been forced to comb the

economic loss doctrine.[47] This well-established Pennsylvania doctrine "'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract,'"[48] including intentional misrepresentation claims and claims based on fraudulent concealment or nondisclosure.[49] Accordingly, Defendant's motion to dismiss Plaintiff's fraud claim is granted with prejudice.[50]

---

record, largely without factual assertions from parties, in addition to determining the applicable legal framework for each claim. The submissions for this case are disappointing, to say the least. This is especially so where the Court expressly commented on the deficiencies in the previous "summary judgment" motion, noting that "[p]arties are required to support their legal motions with accurate legal authority." Doc. 18 at 2 n.7. The Court considered deeming Plaintiff's opposition to summary judgment waived as insufficiently supported; however, because of the glaring errors additionally present in Defendant's submissions, declined to do so.

[47] *See Team Biondi, LLC v. Navistar, Inc.*, 665 F. Supp. 3d 633, 645 (M.D. Pa. 2023) (Brann, J.); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002), *abrogated on other grounds by Earl v. NVR, Inc.*, 990 F.3d 310 (3d Cir. 2021).

[48] *Team Biondi*, 665 F. Supp. 3d at 645 (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).

[49] *Id.*; *see also Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 684 (E.D. Pa. 2011) ("[T]he economic loss doctrine applies to bar tort claims for purely economic loss even where plaintiff alleges an intentional tort such as fraud, if the misrepresentation relates to the quality of the good sold.").

[50] Additionally, even if the tort economic loss doctrine did not apply here, Plaintiff has not provided sufficient evidence for a reasonable jury to find that Defendant made a misrepresentation with knowledge or recklessness as to its falsity with the intent of misleading another. Specifically, there is no evidence in the record that Defendant knew about the defective winch or hours meter. While Plaintiff has found a 2003 John Deere warranty indicating there were already over 3000 hours on the machine twenty years ago, Plaintiff has presented no evidence that Defendant was or ought to have been aware of this warranty. Moreover, while Plaintiff asserts that Defendant should have known the hours meter and winch were faulty, Plaintiff also did not notice these defects upon inspection.

At most, Plaintiff has provided some evidence that Defendant was negligent in checking the machine. However, "[t]he difference between negligent misrepresentation and fraud in Pennsylvania is intent—in fraud, a statement must be made with actual knowledge or recklessness (rather than negligence) as to its falsity." *Chaborek v. Allstate Fin. Servs., LLC*, 254 F. Supp. 3d 748, 752 (E.D. Pa. 2017).

### 2.    Implied Warranty

Plaintiff next brings a claim for breach of implied warranty of fitness for a particular purpose. Such a claim requires that the seller had reason to know of the buyer's particular purpose at the time of contracting, that the buyer was relying on the seller's expertise, and the goods were defective, i.e., "not of a merchantable quality or fit for their particular purpose."[51] "The Pennsylvania Supreme Court has noted that, "[t]he concept of merchantability does not require that the goods be the best quality, or the best obtainable, but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed, that they may be free from significant defects, that they perform in the way that goods of that kind should perform, and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used.'"[52] This warranty arises by operation of law and need not be discussed prior to contracting.[53]

Here, Plaintiff has presented evidence to raise a genuine dispute of material fact on the breach of implied warranty claim. Mr. Porter testified that he knew that Mr. First intended to use the bulldozer for logging and that Mr. First needed "either a winch or logging arches."[54] Based on that representation, Mr. Porter selected

---

[51]    *Pineda v. Lake Consumer Prods., Inc.*, 812 F. Supp. 3d 493, 505-06; *Team Bondi*, 665 F. Supp. 3d at 642.

[52]    *Pineda*, 812 F. Supp. 3d at 506 (quoting in part *Gall by Gall v. Allegheny Cnty. Health Dep't*, 521 Pa. 68 (1989)).

[53]    *Team Bondi*, 665 F. Supp. 3d at 642.

[54]    Doc. 31-3 at 49:1-10.

options to fit Mr. First's needs, and it was from that more limited inventory that Mr. First selected the bulldozer at issue.[55] Therefore, Plaintiff has presented evidence that Defendant knew of Plaintiff's particular purpose, logging, and that Plaintiff was relying in part on Defendant's expertise in selecting the best bulldozer for that job.

There is a genuine dispute of material fact regarding whether the winch was defective at the time of sale. The record is replete with conflicting testimony regarding the winch's quality. Stoltzfus testified that "[t]he winch didn't work from day one, the first day [they] got it" and that he could not utilize it for pulling logs because the gears did not engage under load.[56] The mechanic who then examined the bulldozer, Mitchell, found several problems with the winch[57] and hours meter[58] and could not say when the problems began.[59] On the other hand, an affidavit from Quarrick asserts that the bulldozer was examined by Quarrick's company before sale, which encompassed an inspection of "all major functions including the winch," and that, at that time, "the winch was operational."[60] Accordingly, there remains a

---

[55]  *Id.* The Court notes that Comment 9 to 13 Pa. C.S.A. § 2316 indicates that, where the buyer gave precise specifications as to the goods sought, there is no reliance and therefore no implied warranty. At this point, it remains unclear exactly what communications were made between Porter and First regarding the goods sought. Plaintiff has presented some evidence that Porter selected wares for Plaintiff's purposes, and Defendant has not raised Comment 9 as an issue for summary judgment. However, it remains a genuine dispute of material fact as to how much, if at all, Plaintiff relied on Defendant's representations.

[56]  Doc. 28-4 at 15:9-16:11.

[57]  Doc. 31-4 at 14:17-23.

[58]  *Id.* at 35:1-9.

[59]  *Id.* at 15:20-25.

[60]  Doc. 28-2.

genuine dispute of material fact regarding whether the bulldozer was defective for the particular purpose of logging, given that Defendant asserts the winch was sufficiently operable for the job.[61]

However, 13 Pa. C.S.A. § 2316 provides two relevant situations where such a warranty is inapplicable.[62] "*Unless the circumstances indicate otherwise*, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the attention of the buyer to the exclusion of warranties and makes plain that there is no implied warranty."[63] Additionally, "[w]hen the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him."[64]

Defendant asserts that, irrespective of the bulldozer's quality at time of sale, Plaintiff is barred from this claim because, first, Defendant disclaimed the implied warranty through the "as is" provision on the invoice and, second, that Plaintiff

---

[61] Additionally, it is undisputed that the hours meter did not accurately reflect the hours on the bulldozer. However, there is no evidence on the record to conclude that a faulty hours meter alone would render the bulldozer unfit for the particular purpose, that being logging, as is required under this claim. Even if the dozer's hour meter was reflective of its much higher hours, that does not necessarily render it inoperable for logging if its winch had been operative. Accordingly, the disputed fact for this claim is whether the winch was unfit for its purpose at time of sale. However, the defective hours meter is relevant to the breach of contract claim.

[62] § 2316.

[63] § 2316(c)(1).

[64] § 2316(c)(2).

examined the goods before purchase.[65] Taking both arguments in turn, neither supports granting Defendant's motion for summary judgment.

### a.    § 2316(c)(1) – "As Is" Invoice Term

First, regarding the "as is" exception in § 2316(c)(1), Defendant cites correctly that "as is" expressions may exclude implied warranties, but declines to note that the circumstances of the deal must be consistent with a warranty disclaimer. Indeed, § 2316(c)(1) allows for "as is" to disclaim warranties "unless the circumstances indicate otherwise."[66] In this case, Plaintiff has raised a genuine dispute of material fact regarding the circumstances of this disclaimer.

Mr. First testified that, upon receipt of the invoice with the "as is" disclaimer, he called Mr. Porter and Mr. Porter stated that Mr. First "didn't really have to worry" due to the low hours on the machine and that Defendant "stood behind [the machine] if there was a problem."[67] Mr. Porter testified that he did not say anything of the sort, and that the "as is" nature of the sale is something he discusses with "99%" of customers during negotiation but does not recall specifically having that conversation with Mr. First.[68]

---

[65]  Doc. 29 at 5.
[66]  § 2316(c)(1).
[67]  Doc. 28-3 at 42:1-4.
[68]  Doc. 31-3 at 34:14-25, 38:5-9 ("No, sir, that is not something I would say.").

If this phone call proceeded as Plaintiff claims, then the circumstances could render a warranty disclaimer unclear and ambiguous.[69] Therefore, the "as is" term alone is insufficient for the Court to grant summary judgment, as a reasonable jury could find that the circumstances do not "make[] plain" that there is no implied warranty.[70]

Additionally, under § 2316(a), express and implied warranties "shall be construed wherever reasonable as consistent with each other" but warranty disclaimers are "inoperative to the extent that such [conflicting] construction is unreasonable."[71] In other words, "when otherwise valid disclaimers conflict with existing express warranties, the disclaimers are deemed inoperative."[72] Here, there are genuine disputes of fact regarding whether parties' discussions of the hours meter and quality of the winch constituted express warranties and whether Mr. Porter gave an express warranty on the phone call by saying he stood by the machine if there were problems. If so, then the inconsistent implied warranty disclaimer would be read as inoperative.

---

[69] *Cf Team Biondi*, 665 F. Supp. 3d at 642 (where a signed warranty form was clear in the circumstances that the buyer purchased the goods "as is.").

[70] § 2316(c)(1).

[71] § 2316(a).

[72] *Fleisher v. Fiber Composites, LLC*, No. 12-1326, 2012 WL 5381381, at *5 (E.D. Pa. Nov. 2, 2012) (collecting cases); *Morningstar v. Hallett*, 858 A.2d 125, 131 (Pa. Super. Ct. 2004) (finding that "the 'as is' clause is inconsistent with the express warranty created by the description of the [product] as provided in the sales agreement.").

Defendant repeatedly cites *Team Biondi, LLC v. Navistar, Inc.* to assert that the "as is" clause should bar Plaintiff's claim.[73] However, the situation here is quite different than that in *Team Biondi*; in *Team Bondi*, the plaintiff signed a separate "'Warranty Acceptance/Denial' form acknowledging and accepting the [products] 'as is,'" and the service contract expressly disclaimed implied warranties for other, unlisted parts.[74] Then, the plaintiff attempted to recover for costs of repair outside of the warranty.

In contrast to *Team Biondi*, the invoice in this case listed "sold as is – no warranty" as one of many terms in the description, without a separate form or abundant attention-getting accoutrements like bold or underlined letters.[75] When Mr. First called Mr. Porter about it, Mr. Porter indicated that a warranty was not necessary due to the low hours on the machine and that he stood behind it if there was a problem.[76] Moreover, unlike *Team Biondi*, the alleged deficiencies of the bulldozer were things about which Mr. Porter had made express affirmations: the

---

[73]  Doc. 29 at 6-8; *Biondi*, 665 F. Supp. 3d 633, 642 (M.D. Pa. 2023) (Brann, J.).

[74]  *Biondi*, 665 F. Supp. 3d at 642.

[75]  Doc. 28-5. It is unclear whether this disclaimer was sufficiently conspicuous to exclude implied warranties. *See* § 2316(c)(1) (allowing for disclaimer through language which "calls the attention of the buyer to the exclusion of warranties *and makes plain that there is no implied warranty*") (emphasis added); *see* § 9316 Comment 4 (noting that, "[u]nlike the implied warranty of merchantability, implied warranties of fitness for a particular purpose may be excluded by general language, but only if it is in writing and conspicuous."); *Allen-Myland, Inc. v. Garmin Intern., Inc.*, 140 A.3d 677, 688-89 (Pa. Super. Ct. 2016) (noting the UCC's definition of a conspicuous term is one "displayed or presented that a reasonable person against which it is to operate ought to have noticed it;" that the question of whether a term is conspicuous is a question for the jury; and that conspicuous terms include such terms greater in size or contrast to terms around it.).

[76]  Doc. 28-3 at 42:1-5.

invoice lists "winch" as an attachment, and throughout negotiations and the original advertisement it appears that Mr. Porter represented the hours as 2,546.[77] A reasonable jury could find that, under the circumstances, the "as is" term is insufficiently clear to disclaim warranties regarding the hours meter and winch previously discussed during the negotiation. Therefore, Plaintiff has raised genuine disputes of material fact such that I cannot grant Defendant's motion under § 2316(c)(1).

### b.     § 2316(c)(2) – Buyer Examination

Next, Defendant points to § 2316(c)(2), which provides that there is no implied warranty where the buyer had an opportunity to examine the goods as fully as desired and should have uncovered the defect.  However, there remains a genuine dispute of material fact regarding whether the defect should have been exposed by Mr. First's inspection. Under the Pennsylvania statute, an inspection precludes the implied warranty "with regard to defects which an examination ought in the circumstances to have revealed to [the buyer]."[78] Comment 8 to § 2316(c)(2) provides clarity for this exception:

> Application of the doctrine of "caveat emptor" in all cases where the buyer examines the goods regardless of statements made by the seller is, however, rejected by this Article. Thus, if the offer of examination is accompanied

---

[77]   *Id.* at 34:21-35:8.

[78]   § 2316 (c); *see also Cove at St. Charles Condominium Ass'n v. JWest Corp.*, No. 329 WDA 2013, 2014 WL 1086167, at *5 (Pa. Super. Ct. Feb. 13, 2014); *see also Ward v. Serfas*, 387 Pa. Super. 425 (1989).

by words as to their merchantability or specific attributes and the buyer indicates clearly that he is relying on those words rather than on his examination, they give rise to an "express" warranty. In such cases the question is one of fact as to whether a warranty of merchantability has been expressly incorporated in the agreement. Disclaimer of such an express warranty is governed by subsection (1) of the present section.

The particular buyer's skill and the normal method of examining goods in the circumstances determine what defects are excluded by the examination. A failure to notice defects which are obvious cannot excuse the buyer. However, an examination under circumstances which do not permit chemical or other testing of the goods would not exclude defects which could be ascertained only by such testing. Nor can latent defects be excluded by a simple examination. A professional buyer examining a product in his field will be held to have assumed the risk as to all defects which a professional in the field ought to observe, while a nonprofessional buyer will be held to have assumed the risk only for such defects as a layman might be expected to observe.[79]

This comment illuminates several disputed, factual issues regarding the applicability of §2316(c)(2) to the instant case. First, there is a dispute whether Defendant's "offer of examination [was] accompanied by words as to [the bulldozer's] merchantability or specific attributes and [if Plaintiff] indicate[d] clearly that he [wa]s relying on those words." Mr. First testified that Mr. Porter represented the machine had 2,546 hours, and that, at some point during the negotiation, Mr. First asked Mr. Porter to verify that the machine did indeed have

---

[79]  § 2316(c)(2) Comment 8.

that many hours.[80] To the extent that Mr. Porter made express representations to Mr. First regarding the quality of the machine and Mr. First indicated he was relying on those representations, those representations would become express warranties not excludable under § 2316 (c)(2). The contents of the conversations between Mr. First and Mr. Porter leading up to the sale remain disputed questions of fact, and, therefore, it would be improper to grant Defendant's summary judgment under § 2316(c)(2).

Moreover, it remains in dispute whether a reasonable inspection in the circumstances presented would have revealed the defects by which Plaintiff is aggrieved.[81] Defendant asserts that Quarrick performed an inspection of the machine and Plaintiff claims that Mr. First and Stoltzfus inspected the machine. Neither party noticed the defects, but both claim the other should have.[82] The mechanic Mitchell testified that the underlying defect causing winch issues "would have been obvious to anyone inspecting the bulldozer" and that symptoms of the winch's defect could have been apparent from testing it "under a load."[83] As such, there is a dispute of

---

[80] Doc. 28-3 at 34:21-35:8. The deposition refers to emails and phone calls which were not provided to the Court, and in this line indicates that Porter called First to discuss the hours meter. It is unclear what Porter said when asked to verify that the machine had around 2500 hours.

[81] I assume that the winch was indeed faulty at the time of sale, which I must at this stage given that it is a reasonable inference based on Stoltzfus's and Mitchell's depositions. However, whether the winch was faulty remains a disputed issue for all of Plaintiff's claims.

[82] Doc. 29 at 6-7 ("Any defects (of which there were none) that an examination should have revealed are therefore not covered by an implied warranty"); Doc. 30 at 4 ("It seems obvious that even a minimal inspection by a qualified technician would have revealed [defects]").

[83] Doc. 31-4 at 21:15-19; 40:7-13.

material fact regarding whether a reasonable inspection under the circumstances should have revealed the winch and hours defects.

Additionally, the record indicates that Defendant did not provide Mr. First and Stoltzfus any heavy objects to use to test the winch "under a load."[84] As Comment 8 explains, if the circumstances of the examination do not permit specific testing necessary to reveal the disputed defect, then § 2316(c)(2) does not apply.[85] It is unclear from the record whether the defects could have only been revealed from testing the bulldozer "under load" and whether such a test was permitted under the circumstances.[86]

Accordingly, for a myriad of reasons, the record does not provide a basis sufficient to determine that summary judgment is proper under § 2316(c)(2), as there remain several genuine disputes of material fact surrounding the applicability of this exception. Defendant's motion is therefore denied as to Plaintiff's breach of implied warranty claim.

### 3.     Express Warranty / Breach of Contract

Plaintiff's last claim is for breach of contract. Summary judgment is inappropriate on this claim, as there remain genuine disputes of material fact

---

[84] Doc. 28-4 at 25:12-22.
[85] § 2316 Comment 8.
[86] This Court is unaware of the specific nuances involved in testing bulldozers. Perhaps it is customary for the buyer to bring materials to test such machines under load, or for the seller to supply them. Perhaps neither. The record does not make it clear either way.

regarding the agreed upon terms of the contract and whether Defendant breached those terms.

"To prove a claim for breach of contract, a plaintiff must show that (1) a contract existed between the parties, (2) the defendant breached a duty imposed by that contract, and (3) the plaintiff suffered damages as a result."[87] "'The existence and terms of an oral contract must be established by clear and precise evidence.'"[88] The parol evidence rule "does not bar the introduction of evidence to prove the existence of an oral contract," which is typically a "factual issue for the trier of fact."[89] Summary judgment is appropriate in a contracts dispute where the terms of the agreement are clear and unambiguous,[90] while "[a]mbiguous contract terms present a question for the jury."[91]

Under Pennsylvania law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."[92] A statement made in advertising can become "the basis of the bargain if the plaintiff can prove 'that []he read, heard, saw or knew of the advertisement

---

[87]  *Team Bondi*, 665 F. Supp. 3d at 643.
[88]  *York Excavating Co., Inc. v. Employers Ins. Of Wausau*, 834 F. Supp. 733, 741 (M.D. Pa. 1993) (quoting *Redlick v. Kraft, Inc.,* 745 F. Supp. 296, 300 (E.D. Pa. 1990)).
[89]  *York*, 834 F. Supp. at 741.
[90]  *Paul Revere Protective Life Ins. Co. v. Weis*, 535 F. Supp. 379, 383 (E.D. Pa. 1981).
[91]  *Brand Design Co., Inc. v. Rite Aid Corp.*, 623 F. Supp. 3d 526, 536 (E.D. Pa. 2022).
[92]  § 2313(a)(1); *Pineda v. Lake Consumer Prods., Inc.*, 812 F. Supp. 3d 493, 505 (E.D. Pa. 2025).

containing the affirmation of facts or promise.'"[93] Moreover, "as is" clauses cannot disclaim an express warranty or material term of the agreement.[94]

First, the terms of the contract remain disputed. Contract negotiation in this case was largely oral, without an integrated written agreement, and much of the negotiation took place via text, email, and phone call.[95] While those texts and emails seem to have been produced in discovery and are referenced repeatedly in the depositions, neither party provided those documents to the Court.[96] Plaintiff claims that Mr. Porter told Mr. First the machine had low hours and that he stood behind it if there was a problem; Defendant disputes this.[97]

Plaintiff has submitted evidence from which a reasonable jury could conclude that Defendant agreed to sell Plaintiff a bulldozer with 2,546 hours and a working winch. The advertisement which drew Mr. First to Mr. Porter listed the machine as having a winch and 2,546 hours.[98] Additionally, Mr. First testified that Mr. Porter represented to him that the machine had 2,550 or "low" hours in the negotiation.[99]

---

[93] *Pineda*, 812 F. Supp. 3d at 505 (quoting *Starks v. Colorplast Corp.*, 2014 WL 617130, at *6 (E.D. Pa. Feb. 18, 2024)).

[94] *See Silver v. Porsche of the Main Line*, No. 1057 EDA 2014, 2015 WL 7424848, at *5 (Pa. Super. Ct. Mar. 10, 2015) (citing *Indus. Rayon Corp. v. Clifton Yarn Mills, Inc.*, 310 Pa. 322 (Pa. 1933) and *Morningstar v. Hallett*, 858 A.2d 125, 131 (Pa. Super. 2004)).

[95] *See, e.g.*, Doc. 28-3 at 16:6-21:1, 27:15-28:17; Doc. 31-3 at 25:18-21, 29:5-9, 34:14-20, 37:4-38:9.

[96] The failure to provide such documents would be surprising, as those documents are seemingly the most on-point evidence of the contract at issue, but for the manner in which both parties are conducting this litigation. Given the derelict submissions for both this and the prior motion, the Court is disappointed but not surprised.

[97] Doc. 28-3 at 42:3-5; Doc. 31-3 at 38:5-9.

[98] Doc. 31-2.

[99] Doc. 28-3 at 34:21-35:8; 41:24-42:5.

Moreover, to the extent that Mr. Porter did indeed make representations about the machine's hours or quality, such as saying that he stood behind it, those representations could be express warranties and become part of the bargain.[100]

Additionally, assuming the contract's terms were as Plaintiff asserts, there remains a genuine dispute of material fact regarding whether Defendant breached those terms. Specifically, as discussed above, the quality of the bulldozer at the time of sale is in contention. Plaintiff asserts the winch did not work from the first day, while Defendant asserts that Quarrick inspected the winch and found it working before sale.[101] The Court cannot rule that Defendant is entitled to judgment as a matter of law as the record presents directly conflicting testimony about the bulldozer's quality at the time of sale.

Finally, Plaintiff has presented evidence for a jury to conclude that Plaintiff incurred damages, even if the record indicates those damages were likely relatively minimal. Mitchell's testimony indicated repair costs of around $20,600 for all the flaws in the bulldozer.[102] Mr. First testified that there were additional losses for the delays in having a working bulldozer for their project and for hauling the bulldozer

---

[100] Alternatively, a jury could determine that such expressions were puffery statements. *See Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 342-43 (E.D. Pa. 2022) (noting that "affirmation of value or statement of a seller's opinion is otherwise known as puffery" and that "[t]ypically, the finder of fact determines whether a statement qualifies as puffery, except in the unusual case where the answer is so clear that it may be decided as a matter of law.") (internal quotation omitted). This is not a case where the record clearly indicates what statements were said, let alone whether those statements were puffery or express warranties.

[101] Doc. 28-4 at 15:9-16:11; Doc. 28-2.

[102] Doc. 31-4 at 38:22-25.

to a mechanic shop.[103] The question of exactly how much would be recoverable for this breach of contract claim remains in dispute.[104]

Therefore, Plaintiff has presented sufficient evidence of each element of its breach of contract claim to allow a reasonable factfinder to determine that its claim is meritorious. Defendant's only argument regarding the breach of contract claim is that the equipment was sold "as is." However, a seller cannot absolve themselves of complete liability through an "as is" term where the issues sought to be disclaimed stand in direct contrast to material terms of the agreement.[105] The "as is" term does not provide a bar to Plaintiff's breach of contract claim, as a factfinder could determine that the deficiencies at issue were in contrast to material terms or express warranties.

Defendant has not established that summary judgment is appropriate for this claim. There remain genuine disputes of material fact regarding the terms of the

---

[103] Doc. 28-3 at 48:20-14, 47:21-25.

[104] The Court is skeptical as to whether this complaint should have been brought in federal court, given that the bulldozer itself cost less than $75,000. However, because Plaintiff brought a facially validly pled fraud claim, and because the amount in controversy is determined at the time of filing, the Court could not remand the remaining claims despite the seemingly very minimal damages. *See Anthony v. Nat'l Repub. Cong. Comm.*, No. 24-3052, 2025 WL 2741798, at *3 (3d Cir. Sept. 26, 2025) (citing *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F. 3d 237, 244 (3d Cir. 2008)).

The Court also notes that, as the only remaining claims are those for breach of contract, attorney's fees awards are generally improper. *See Alex v. Henry S. Conrey, Inc.*, 380 F. Supp. 1147, 1153 (E.D. Pa. 1974).

[105] *See Silver*, 2015 WL 7424848, at *5; *Morningstar*, 858 A.2d at 131; *see also* § 2316(a), *supra* notes 71-72. For instance, if a widget seller advertised "batch of 50 widgets, sold as is," the "as is" term could not render him immune from suit if what he delivered was less than 50 widgets or if the widgets indeed were not widgets at all but gadgets.

contract, whether Defendant breached those terms, and what the resulting damages were. Defendant's motion is therefore denied.

## III.    CONCLUSION

Defendant's motion for summary judgment is granted as to Plaintiff's fraud claim but denied as to Plaintiff's breach of contract and breach of implied warranty of fitness for a particular purpose claims.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

24